## HILLIKER v. HALE.

(Circuit Court of Appeals, Second Circuit.    May 16, 1902.)

No. 109.

1. CORPORATIONS—ACTION AGAINST STOCKHOLDER—LIMITATION.

Under the law of Minnesota, as settled by the decision of its supreme court, a suit to enforce the statutory liability of stockholders in a corporation may be brought at any time after the corporation has been adjudged insolvent, notwithstanding the pendency of proceedings to sequester and administer its property under the state insolvency law; and an action brought in New York against a resident of that state to enforce his liability as a stockholder in a Minnesota corporation, which is not commenced until more than six years after the corporation has been declared insolvent and a receiver appointed under the insolvency law, is barred by limitation, whether the six-years limitation of Minnesota or the three-years limitation of New York is applied.

2. SAME—RECEIVER—RIGHT TO SUE IN FOREIGN JURISDICTION.

A receiver appointed by a court under its general equity powers, to enforce and collect judgments rendered against stockholders of an insolvent corporation upon their statutory liability, to institute and prosecute proceedings against nonresident stockholders for the enforcement of such liability, and to hold all money collected subject to the further orders of the court, is merely an agent of the court, without any extraterritorial power, and is not vested with any title to the cause of action against a stockholder in favor of creditors of the corporation which will support an action at law by him against such stockholder in another jurisdiction.

---

¶ 1. See Corporations, vol. 12, Cent. Dig. §§ 1090, 1092.

In Error to the Circuit Court of the United States for the Northern District of New York.

This cause comes here upon writ of error to review a judgment of the circuit court, Northern district of New York, in favor of defendant in error, who was plaintiff below. 100 Fed. 273. Plaintiff "as receiver for the collection and enforcement of the liability of stockholders of the Northwestern Guaranty Loan Company," sued defendant, who was a stockholder of that company, a Minnesota corporation, to charge him with liability for the debts of said corporation to its creditors. The action was tried before the court without a jury, and there is no dispute as to the facts.

Section 3, art. 10, of the constitution of Minnesota is as follows: "Each stockholder in any corporation (excepting those organized for the purpose of carrying on any kind of manufacturing or mechanical business) shall be liable to the amount of stock held or owned by him."

The Statutes of Minnesota of 1894 (chapter 76) have the following provisions, which have been referred to on the argument:

"Sec. 9. Whenever a judgment is obtained against any corporation incorporated under the laws of this state, and an execution issued thereon is returned unsatisfied in whole or in part, upon the complaint of the person obtaining such judgment, or his representatives, the district court within the proper county may sequestrate the stock, property, things in action and effects of such corporation, and appoint a receiver of the same."

"(Sec. 17) (Sec. 5905). Whenever any creditor of a corporation seeks to charge the directors, trustees, or other superintending officers of such corporation, or the stockholders thereof, on account of any liability created by law, he may file his complaint for that purpose in any district court which possesses jurisdiction to enforce such liability.

"(Sec. 18) (Sec. 5906). The court shall proceed thereon, as in other cases, and, when necessary, shall cause an account to be taken of the property and debts due to and from such corporation, and shall appoint one or more receivers.

"(Sec. 19) (Sec. 5907). If, on the coming in of the answer or upon the taking of any such account, it appears that such corporation is insolvent, and that it has no property or effects to satisfy such creditors, the court may proceed, without appointing any receiver, to ascertain the respective liabilities of such directors and stockholders, and enforce the same by its judgment, as in other cases.

"(Sec. 20) (Sec. 5908). Upon a final judgment in any such action to restrain a corporation or against directors or stockholders, the court shall cause a just and fair distribution of the property of such corporation and of the proceeds thereof to be made among its creditors.

"(Sec. 21) (Sec. 5909). In all cases in which the directors or other officers of a corporation, or the stockholders thereof, are made parties to an action in which a judgment is rendered, if the property of such corporation is insufficient to discharge its debts, the court shall proceed to compel each stockholder to pay in the amount due and remaining unpaid on the shares of stock held by him, or so much thereof as is necessary to satisfy the debts of the company.

"(Sec. 22) (Sec. 5910). If the debts of the company remain unsatisfied, the court shall proceed to ascertain the respective liabilities of the directors or other officers and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment, as in other cases.

"(Sec. 23) (Sec. 5911). Whenever any action is brought against any corporation, its directors or other superintending officers, or stockholders, according to the provisions of this chapter, the court, whenever it appears necessary or proper, may order notice to be published, in such a manner as it shall direct, requiring all the creditors of such corporation to exhibit their claims and become parties to the action, within a reasonable time, not less than six months from the first publication of such order, and, in default thereof, to be precluded from all benefit of the judgment which shall be rendered in such action, and from any distribution which shall be made under such judgment."

The facts are as follows: At all the times hereinafter mentioned defendant

was a citizen and resident of New York and a stockholder of the Northwestern Guaranty Loan Company. On May 16, 1893, this corporation confessed judgment to the Northwestern Fuel Company for the sum of $213. On May 17, 1893, a petition was made by a judgment creditor under the general insolvency act of Minnesota (chapter 148, Laws 1881) praying that the company be adjudged insolvent. Upon the return of the petition and the appearance of the company by attorney it was adjudged May 20, 1893, that said company was and for a long time had been insolvent, and the Minneapolis Trust Company was appointed receiver of said company, with power and authority to take possession of all the property of the debtor. This receiver duly qualified and is still acting as such receiver. In February, 1894, one Rogers, a judgment creditor of the guaranty company with execution returned unsatisfied, in behalf of himself and of all other creditors of the said company, brought suit in the proper district court in Minnesota against it, its receiver and all its stockholders, including the defendant in this action, for the purpose of "enforcing the stockholders' liability, for an accounting of the debts and assets of said corporation, the ascertainment of the deficiency, the apportionment and assessment of such deficiency amongst the several stockholders, and for the appointment and designation of a receiver for the purpose of enforcing and collecting such assessment or ascertained liability." This suit was manifestly brought under section 17 of the laws above quoted; only resident stockholders were served. The Minnesota court on February 7, 1897, entered judgment against the resident stockholders for sums amounting to the respective holdings of each stockholder. It also "for the purpose of enforcing and collecting said judgments and all thereof, and any and all liabilities thereon or in any wise connected therewith, and disbursing the amount so collected," appointed the plaintiff, William E. Hale, "as receiver, * * * authorized and empowered and directed to take any and all appropriate or necessary steps or proceedings for the purpose of collecting said judgment, * * * and to take all necessary or appropriate steps or proceedings against the nonresident stockholders * * * for the enforcement and realization upon their stockholders' liability, and to that end * * * to institute and prosecute all such actions or proceedings in foreign jurisdictions as may be necessary or appropriate."

Hale brought this suit against the defendant, setting forth these facts, and also alleging that the indebtedness of the guaranty company above all assets was greatly in excess of the entire amount, which could be realized by contribution from all the stockholders to the full extent of their holdings. Judgment was asked for $30,000, defendant holding 300 shares of stock, and the decision of the circuit court giving judgment as prayed is now brought here for review.

C. C. Van Kirk, for plaintiff in error.
H. M. Boutelle, for defendant in error.

Before LACOMBE and TOWNSEND, Circuit Judges.

PER CURIAM. Out of the many questions which have been argued here two only need be considered.

Concededly the guaranty company was a "moneyed corporation." It was held by this court in Hobbs v. Bank, 37 C. C. A. 513, 96 Fed. 396, 41 C. C. A. 205, 101 Fed. 75, that the three-years statute of limitations (Code Civ. Proc. N. Y. § 394) applied to suits like this against stockholders in such corporations; and it was intimated by part of the court that that period might be reduced, when there was a shorter statute of limitations in the home state. The statute of limitations in this state still remains three years; the statute of limitations in Minnesota for like actions is six years. Gen. St. 1878, p. 707. This action was begun September 16, 1899. As appears from the statement of facts, the guaranty company was adjudged to be insol-

vent May 20, 1893. If the cause of action against the defendant arose then, it would be barred by either statute. In courts outside of Minnesota there is conflict as to when such cause of action arose; but we are of the opinion that such question should be decided in conformity with the decisions of the Minnesota courts, and they speak with no uncertain sound.

In Olsen v. Cook, 57 Minn. 552, 59 N. W. 635, an action was brought under this very statute (section 17) to enforce the statutory liability of stockholders of a bank. The plaintiff was a judgment creditor, with execution returned unsatisfied. The bank had made an assignment under the insolvent law (Act 1881). Defendants demurred on the grounds that there was another action pending (to wit, the insolvency proceedings under Laws 1881, c. 148), and that the complaint did not state a cause of action, on the theory that stockholders can be held to their statutory liability "only after the corporate assets have been fully administered and found to be insufficient," and that a stockholder is not liable to action for such liability "where it does not appear that the corporate assets proper have been fully administered and a deficiency ascertained," and that the action was "prematurely brought." The court overruled the demurrers, holding that:

"Chapter 76, §§ 17–23, inclusive, authorize an action by creditors to enforce the statutory liability of officers, directors, and stockholders; and while, in such an action, it would be required of the complaint to show a necessity to resort to that liability in order to satisfy the corporate debts (which the complaint in this case does) it certainly would not be required of it to show to what extent such resort is necessary, or to show that the corporate assets have been exhausted without satisfying the debts. Section 18 reads: 'The court shall proceed thereon [on the complaint filed under section 17] as in other cases, and, when necessary, shall cause an account to be taken of the property and debts due to and from such corporation, and shall appoint one or more receivers.' Section 19: 'If, on the coming in of the answer, or upon the taking of any such account, it appears that such corporation is insolvent, and that it has no property or effects to satisfy such creditors, the court may proceed without appointing any receiver to ascertain the respective liabilities of such directors and stockholders and enforce the same by its judgment as in other cases.' Section 20 provides that upon final judgment in such an action the court shall cause a just and fair distribution of the property of such corporation, and of the proceeds thereof, to be made among its creditors. Section 21 provides that, if the property of the corporation is insufficient to satisfy its debts, the court shall enforce the payment of anything unpaid on the shares of stock, or so much thereof as is necessary to satisfy the corporate debts; and section 22, that if the debts remain unsatisfied the court shall proceed to ascertain the respective liabilities of the directors or other officers, and of the stockholders, and to adjudge the amount payable by each, and enforce the judgment as in other cases. Section 23 provides for calling in creditors other than those bringing the action. It is apparent from these sections that, where resort to the statutory liability is shown to be necessary, the creditor need not, before bringing the action, exhaust his remedies against the corporate property. That may be done in the action itself."

The court held that the pendency of insolvency proceedings to sequester, convert, and apply on the corporate debts the proceeds of the corporate assets was no bar to the bringing of an action to enforce statutory liability under section 17, although the amount required to make up the deficit is not yet ascertained.

"In such a case [says the court] there would be nothing to prevent the court determining at once the maximum liability of each officer, director, and stockholder, as it might do if it also appointed a receiver to administer the corporate assets. It is true that before determining how much should, within that maximum, be collected from each, it would have to await the result of the other proceeding. But, if it appointed a receiver to administer corporate assets, it would, for the same purpose, have to await the result of the proceedings of its own receiver. We think such an action may be brought pending the insolvency proceeding, that this is such an action, and that consequently it was not prematurely brought."

We have not been referred to nor have we been able to find any decision by a Minnesota court which in any way modifies the views expressed in Olsen v. Cook, supra. Under the statute as thus construed, action might have been brought to enforce statutory liability of any and every stockholder of the guaranty company at any time subsequent to May, 1893. The cause of action then arose, and, inasmuch as this action was not begun until more than six years later, it is barred equally by the New York and by the Minnesota statute, whichever applies.

We are further of the opinion that the plaintiff cannot maintain this action. He sues as receiver. His rights, if any, rest wholly upon the order and decree in the Rogers Case. Without regard to the nature of the claim asserted against the defendant, the plaintiff has no relation to that claim otherwise than through such order and decree. He is not the assignee of all or any of the creditors. He has no title to anything, so far as appears, except to his office of receiver. The order and decree, in terms, make him a mere agent of the Minnesota court. That court undertook to authorize him to sue nonresidents in other jurisdictions; moneys collected to be "held by him subject to the further order of this court (the Minnesota court) in the premises." The Minnesota court thus attempted to send its agent to collect money by suit outside of its jurisdiction, and bring it back to be disposed of as it might direct. If it had had power to transfer the claim against the defendant to the plaintiff, and had in fact so transferred it, he could assert the title thus acquired and sue upon such claim here in accordance with the principles stated in Association v. Rundle, 103 U. S. 222, 26 L. Ed. 337. Apparently the court had no such power. Whether it had or not, it did not attempt to exercise it. It transferred nothing to the plaintiff. It merely appointed him its own agent to collect and hold subject to its order. He was made an arm of the court, with which the court attempted to reach outside of its territorial jurisdiction, and the attempt, it seems to us, was futile. The court could not reach beyond the limits of its jurisdiction through a receiver any more than it could through a marshal or a sheriff. The authority which it sought to give to the plaintiff became a dead letter when he passed beyond the boundaries of the state. This is substantially what was held in Booth v. Clark, 17 How. 322, 15 L. Ed. 164, which has never been reversed. There a statutory receiver appointed in New York was authorized by the court to go into another jurisdiction to collect a claim. The court held that he could not there maintain an action at law, and said as follows:

"He [the receiver] has no extra territorial power of official action; none which the court appointing him can confer, with authority to enable him to go into a foreign jurisdiction, to take possession of the debtor's property; none which can give him, upon the principle of comity, a privilege to sue in a foreign court or another jurisdiction, as the judgment creditor himself might have done, where his debtor may be amenable to the tribunal which the creditor may seek."

The rule in this circuit, as laid down in Sands v. Greeley, 31 C. C. A. 424, 88 Fed. 130, is as follows:

"When a foreign receiver is obliged to invoke the aid of the court of another state in asserting his title to assets within its jurisdiction, such court will not, in the exercise of comity, recognize his title to the prejudice of the citizens of its own state, who have fairly acquired title to the assets, either by purchase, attachment, or other legal process, or whose claims are entitled to priority as equitable liens. * * * This is because he is appointed by a court which derives its jurisdiction from state laws which have ex proprio vigore no extraterritorial force, and the effect of which in other states depends wholly on the comity of the state in which their application is invoked. But by the comity extended by the several states of the Union to one another, not only from motives of respect but from consideration of mutual convenience, the right of a receiver to possess himself of assets located in a state other than that of his appointment is everywhere recognized and enforced, subject to the qualification mentioned."

Association v. Rundle, supra, which concerns the powers of an official vested by statute with title to corporate assets, simply emphasizes the distinction made in Booth v. Clark between one who, under any name, is given by statute a title which he can assert anywhere, and one who is appointed receiver under the ordinary power in equity, and is a mere agent or officer of the court. Of the receiver in Booth v. Clark the court says:

"He is a representative of the court, and may, by its direction, take into his possession every kind of property which may be taken in execution, and also that which is equitable if of a nature to be reduced into possession."

The court cannot take in execution property not within its legal jurisdiction. A creditors' bill, by which equitable assets can be reached, is a substitute for the common-law execution, and can be brought only in the same jurisdiction. Tubeworks Co. v. Ballou, 146 U. S. 517, 13 Sup. Ct. 165, 36 L. Ed. 1070. That the court cannot send its marshal or sheriff outside of its jurisdiction to seize property cannot be disputed. Upon the same principle, it can send no other officer or agent to collect moneys outside of its territorial limits. By force of statute, a court may in a particular case vest in a person called a receiver—or called by any other name—title to a chose in action, and that title may be asserted elsewhere; but an officer acting merely as an arm of the court cannot sue beyond the jurisdiction of the court. Brigham v. Luddington, 12 Blatchf. 237, Fed. Cas. No. 1,874; Bank v. Francklyn, 120 U. S. 747, 7 Sup. Ct. 757, 30 L. Ed. 825; Huntington v. Attrill, 146 U. S. 657, 13 Sup. Ct. 224, 36 L. Ed. 1123; Lynde v. Lynde, 162 N. Y. 405, 56 N. E. 979, 48 L. R. A. 679, 76 Am. St. Rep. 332, 181 U. S. 186, 21 Sup. Ct. 555, 45 L. Ed. 810; Barnes v. Wheaton, 80 Hun, 8, 29 N. Y. Supp. 830, approved in Marshall v. Sherman, 148 N. Y. 27, 42 N. E. 419, 34 L. R. A. 757, 51 Am. St. Rep. 654; Railway Co. v. Kent, 87 Hun, 329, 34 N. Y.

117 F.—15

Supp. 427, approved in Stoddard v. Lum, 159 N. Y. 274, 53 N. E. 1108, 45 L. R. A. 551, 70 Am. St. Rep. 541.

The plaintiff was not appointed receiver in the Rogers Case under the authority of any statute. His appointment was only a method adopted by the court under its general powers as a court of equity, upon the theory that it was necessary in order to enable it to grant the relief to which the parties to that suit seemed to it to be entitled. Whatever authority was given to the plaintiff was given to him as a mere agent of the Minnesota court. See Hanson v. Davison (Minn.) 76 N. W. 254. It would seem, therefore, under the decisions of the federal courts, that this plaintiff could not maintain an action at law in a foreign jurisdiction.

The judgment of the circuit court is reversed.