### WESTERN UNION TELEGRAPH CO. v. LOUISVILLE & N. R. CO. et al.

#### (District Court, E. D. Tennessee, N. D.    August 10, 1912.)

#### No. 1,658.

**1. REMOVAL OF CAUSES (§ 12*)—FEDERAL QUESTION—EFFECT OF NONRESIDENCE OF DEFENDANT.**

Under Jud. Code, § 51 (Act March 3, 1911, c. 231, 36 Stat. 1101 [U. S. Comp. St. Supp. 1911, p. 150]), which provides that, with certain exceptions, no civil suit shall be brought in any District Court in any other district than that whereof the defendant is an inhabitant, a suit not within any of the exceptions is not removable from a state court on the ground that it is one arising under the Constitution or laws of the United States, where none of the defendants are inhabitants of the district, unless plaintiff consents to the jurisdiction, or waives objection thereto.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 32, 33; Dec. Dig. § 12.*]

**2. COURTS (§ 269*)—REMOVAL OF CAUSES (§ 12*)—FEDERAL QUESTION—JURISDICTION OF FEDERAL COURT—"SUIT TO ENFORCE CLAIM TO PROPERTY."**

A proceeding under the eminent domain statutes of a state to condemn a right of way for a telegraph line is not a suit to enforce a "legal or equitable * * * claim to" property within the meaning of Jud. Code, § 57 (Act March 3, 1911, c. 231, 36 Stat. 1102 [U. S. Comp. St. Supp. 1911, p. 152]); and, assuming that such a suit would be excepted by section 51 from the general requirement that suits must be brought in the district of which the defendant is an inhabitant, such a proceeding is not removable from a state court on the ground that it is one arising under the Constitution and laws of the United States, where none of the defendants are residents of the district, unless plaintiff waives objection thereto.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 809; Dec. Dig. § 269;* Removal of Causes, Cent. Dig. §§ 32, 33; Dec. Dig. § 12.*]

**3. REMOVAL OF CAUSES (§ 102*)—GROUNDS FOR REMAND—DOUBTFUL JURISDICTION.**

Jurisdiction of a removed cause should be retained only where the federal jurisdiction is clear; and, if there is any substantial doubt, the cause should be remanded.

[Ed. Note.—For other cases, see Removal of Causes, Cent. Dig. §§ 218–220, 223. 224; Dec. Dig. § 102.*

Proceedings under power of eminent domain as civil suits under laws relating to removal of causes to federal courts, see note to South Dakota C. Ry. Co. v. Chicago, M. & St. P. Ry. Co., 73 C. C. A. 183.]

At Law. Proceeding by the Western Union Telegraph Company against the Louisville & Nashville Railroad Company and others. On motion to remand to state court. Motion sustained.

Shields, Cates & Mountcastle, of Knoxville, Tenn., for complainant. J. B. Wright and J. G. Johnson, both of Knoxville, Tenn., for defendants.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

SANFORD, District Judge. The Western Union Telegraph Co., a corporation organized under the laws of the State of New York, filed its petition in the Circuit Court of Knox County, Tennessee, a county within this division of the Eastern District of Tennessee, against the Louisville & Nashville Railroad Co., a corporation organized under the laws of the State of Kentucky, the Central Trust Company of New York, the New York Trust Co. of New York, and the United States Trust Co. of New York, corporations organized under the laws of the State of New York. This petition alleged that the petitioner was a telegraph company engaged in transmitting messages and news by wires; that the Louisville & Nashville Railroad Co., a railroad corporation, owned an easement or right of way extending through Knox County, Tennessee, upon which was constructed an interstate railroad operated by said defendant as a common carrier of freight and passengers, and for carrying United States mails, subject to the laws of the United States and the State of Tennessee; that the petitioner desired to operate and maintain an electric telegraph upon said railroad right of way through Knox County, and sought by its petition to condemn and acquire an easement for said purpose upon said right of way under and by virtue of the acts of Congress relating to telegraphs, contained in sections 5263 and 5268 (U. S. Comp. St. 1901, pp. 3579, 3581), inclusive, of the Revised Statutes of the United States, the provisions of which had been accepted by petitioner, and also under and by virtue of the statutes of the State of Tennessee; and that the defendant Trust Companies were made parties as being severally trustees under certain mortgages executed by the defendant railroad company upon its said right of way to secure certain issues of bonds. The petition prayed for process, that a writ of inquiry be awarded, a jury of inquest appointed to set aside the easement desired by metes and bounds and to assess damages, and that the easement so set apart be decreed to petitioner as a right of way; and for general relief.

The defendants, within the time allowed, filed their joint petition in the Circuit Court of Knox County for the removal of the cause to this court. This petition for removal alleged that the amount in controversy exceeded the sum of three thousand dollars, exclusive of interest and costs, and that the Telegraph Company asserted a right to appropriate the defendants' property under and by virtue of the act of Congress, and that the proceeding was a suit of a civil nature at law arising under the Constitution and laws of the United States. The petition for removal also alleged that the Railroad Company's right of way had been made a highway of interstate commerce by act of Congress of June 15, 1866, and a post road by acts of Congress of 1838 and 1878, and that the defendant Railroad Company had also become a telegraph company by amendment to its charter and acceptance of the act of Congress of July 24, 1866, and by virtue of the act of Congress of June 23, 1879, was authorized to transmit intelligence not only for its railroad purposes, but also for the United States and the general public, and that "while petitioner claims and asserts certain rights against the property of defendants

under the Constitution and laws of the United States, these defendants also claim certain rights, privileges and immunities under the same provisions of the Constitution and under the same laws of the United States." In an amended and supplemental petition filed by the defendants in the Circuit Court of Knox County, it was averred in greater detail that the controversy arose under the Constitution and laws of the United States, in that it necessarily involved the construction of clause 8, art. 1, of the Constitution of the United States, and the acts of Congress of June 15, 1866, and of July 24, 1866, in certain respects set forth in the amended and supplemental petition.

[1] The Circuit Court of Knox County granted the defendants' petition for removal as prayed, and a transcript of the record having been filed in this court, the Western Union Telegraph Co., the original petitioner, hereinafter called the plaintiff, moved to remand the case to the Circuit Court of Knox County on two grounds: 1st, that the suit was not one of which the United States District Court had original jurisdiction; and, 2nd, that the suit presented no Federal question involving any substantial controversy.

The sole ground for removal stated in the defendants' petition for removal is that this is a suit of a civil nature at law, arising under the Constitution and laws of the United States, in which the matter in controversy exceeds, exclusive of interest and costs, the sum or value of $3,000.00. The jurisdiction of this court must be determined by the provisions of the Judicial Code, which was enacted March 3, 1911, and went into effect on January 1, 1912.

Section 28 of the Code, which is derived from section 2 of the act of March 3, 1875, c. 137, 18 Stat. 470, as amended by section 1 of the act of August 3, 1888, c. 866, 25 Stat. 433 (U. S. Comp. St. 1901, p. 509), provides that:

"Any suit of a civil nature, at law or in equity, arising under the Constitution or laws of the United States * * * of which the district courts of the United States are given original jurisdiction by this title, which may now be pending or which may hereafter be brought, in any State court, may be removed by the defendant or defendants therein to the district court of the United States for the proper district. Any other suit of a civil nature, at law or in equity, of which the district courts of the United States are given jurisdiction by this title, and which are now pending or which may hereafter be brought, in any State court, may be removed into the district court of the United States for the proper district by the defendant or defendants therein, being non-residents of that State."

Section 29 of the Code, derived from section 3 of the act of 1875, as amended by section 1 of the act of 1888, provides that the party entitled to removal shall file his petition in the State court, "for the removal of such suit into the district court to be held in the district where such suit is pending."

The first subsection of section 24 of the Code, derived from section 1 of the act of 1875, as amended by section 1 of the act of 1888, vests the district courts of the United States with original jurisdiction of "all suits of a civil nature, at common law or in equity * * * where the matter in controversy exceeds, exclusive of interest and

costs, the sum or value of three thousand dollars, and  *  *  *  (a) arises under the Constitution or laws of the United States  *  *  * or (b) is between citizens of different States, or (c) is between citizens of a State and foreign States, citizens or subjects."

Section 51 of the Code, derived from section 1 of the act of 1875, as amended by section 1 of the act of 1888, further provides, however, that:

"Except as provided in the six succeeding sections, no civil suit shall be brought in any district court against any person by any original process or proceeding in any other district than that whereof he is an inhabitant; but where the jurisdiction is founded only on the fact that the action is between citizens of different States, suit shall be brought only in the district of the residence of either the plaintiff or the defendant."

So far as the question now involved is concerned, these several provisions of the Code in reference to the jurisdiction of the District Courts of the United States are substantially the same as the provisions of the acts of 1875 and 1888 in reference to the jurisdiction of the Circuit Courts of the United States, and the decisions under said former jurisdictional acts are directly applicable.

I find it unnecessary to determine however whether the plaintiff's statement of its own cause of action sufficiently shows that this suit arises under the Constitution and laws of the United States within the "settled interpretation" stated in Louisville & N. R. Co. v. Mottley, 211 U. S. 149, 152, 29 Sup. Ct. 43, 53 L. Ed. 126, and In re Winn, 213 U. S. 458, 465, 29 Sup. Ct. 515, 53 L. Ed. 873, since I am of the opinion that even if it be a suit so arising, nevertheless, as the defendants are not inhabitants of this district, and the suit therefore, under section 51 of the Code, could not have been originally brought by the plaintiff against them in this court, without the consent of the defendants, it cannot be removed by the defendants to this court or jurisdiction acquired by this court under their removal proceedings, unless the plaintiff consents to the jurisdiction of this court or waives its objection thereto.

1. Following the decisions of the Supreme Court in Ex parte Wisner, 203 U. S. 449, 27 Sup. Ct. 150, 51 L. Ed. 264, and In re Moore, 209 U. S. 491, 28 Sup. Ct. 585, 706, 52 L. Ed. 904, 14 Ann. Cas. 1164, it was uniformly held by the Circuit Courts of the United States, as a corollary of those two decisions, that a suit arising under the Constitution and laws of the United States when brought originally in a State court against a defendant who did not reside in the district in which the suit was brought, was not removable by the defendant to the Circuit Court of the United States for such district, and that, if removed, it must, unless the plaintiff waived objection to the jurisdiction of such Circuit Court, be remanded to the State court. Clark v. Southern Pac. Co. (C. C.) 175 Fed. 122, 127; Hubbard v. Railway Co. (C. C.) 176 Fed. 994; Bottoms v. Railway Co. (C. C.) 179 Fed. 318.

In Ex parte Wisner, supra, it was held by the Supreme Court that under the acts of 1875 and 1888 an action commenced in a State court of Missouri by a citizen of Michigan against a citizen of Lou-

isiana was not removable by the defendant to the Circuit Court of the United States in Missouri on the ground of diversity of citizenship, and should, on the plaintiff's motion, be remanded to the State court. The ground of this decision was, in substance: that it was "settled," in Tennessee v. Bank, 152 U. S. 454, 14 Sup. Ct. 654, 38 L. Ed. 511, Mexican National Railroad v. Davidson, 157 U. S. 201, 15 Sup. Ct. 563, 39 L. Ed. 672, and Cochran v. Montgomery County, 199 U. S. 260, 272, 26 Sup. Ct. 58, 50 L. Ed. 182, 4 Ann. Cas. 451, that no suit was removable under these acts unless it was one that the plaintiff could have brought originally in the Circuit Court; that as neither of the parties to the suit was a citizen of the State of Missouri, in which the suit was brought, it could not, under the limitations imposed by these acts, have been brought in the Circuit Court of the United States in Missouri in the first instance; that, although the defendant had by his petition for removal waived the objection so far as he was personally concerned that he was not sued in his district, "jurisdiction of the suit could not have obtained, even with the consent of both parties"; and that when the defendant by his petition for removal, which was in the nature of process transferring the case from the State to the Circuit Court, sought affirmative relief. in another district than his own, the plaintiff, in resisting his application and moving to remand, denied the jurisdiction of the Circuit Court, and it had no jurisdiction to proceed.

In the subsequent case of In re Moore, supra, in which a suit brought in a State court in Missouri by a citizen of Illinois against a citizen of Kentucky had been removed by the defendant to the Circuit Court of the United States in Missouri, on the ground of diversity of citizenship, it was contended that both parties had consented to the jurisdiction of the Circuit Court, and that the case was hence not controlled on the facts by the decision in Ex parte Wisner. The Supreme Court held that this brought up "two questions: first, whether both parties did consent to accept the jurisdiction of the United States court; and, second, if they did, what effect such consent had upon the jurisdiction of the United States court" (209 U. S. page 496, 28 Sup. Ct. page 586, 52 L. Ed. 904, 14 Ann. Cas. 1164); that the defendant had obviously consented to accept the jurisdiction of the United States court by filing his petition for removal to that court, and that the plaintiff, after such removal, having, without making a motion to remand, filed an amended petition in that court and repeatedly recognized its jurisdiction, had likewise consented to accept the jurisdiction of that court; and that the jurisdiction of the Circuit Court was hence "settled by the proceedings had by the two parties" (209 U. S. page 508, 28 Sup. Ct. page 591, 52 L. Ed. 904, 14 Ann. Cas. 1164), the dictum in the Wisner Case that "jurisdiction of the suit could not have obtained, even with the consent of both parties," being overruled (209 U. S. page 507, 28 Sup. Ct. page 591, 52 L. Ed. 904, 14 Ann. Cas. 1164). After citing various cases in which, in suits within the general jurisdiction of the Circuit Courts, objection to the jurisdiction of a particular Circuit Court had been held to be waived, the court

said (209 U. S. page 506, 28 Sup. Ct. 591, 52 L. Ed. 904, 14 Ann. Cas. 1164):

"It is true that in most of the cases the waiver was by the defendant, but the reasoning by which a defendant is precluded by a waiver from insisting upon any objection to the particular United States court in which the action was brought compels the same conclusion as to the effect of a waiver by the plaintiff of his right to challenge that jurisdiction in case of a removal. As held in Kinney v. Columbia Saving & Loan Association, 191 U. S. 78 [24 Sup. Ct. 30, 48 L. Ed. 103], a petition and bond for removal are in the nature of process. They constitute the process by which the case is transferred from the State to the Federal Court, and if when a defendant is brought into a Federal Court by the service of original process he can waive the objection to the particular court in which the suit is brought, clearly the plaintiff, when brought into the Federal court by the process of removal, may in like manner waive his objection to that court. So long as diverse citizenship exists the Circuit Courts of the United States have a general jurisdiction. That jurisdiction may be invoked in an action originally brought in a Circuit Court or one subsequently removed from a State court, and if any objection arises to the particular court which does not run to the Circuit Court as a class that objection may be waived by the party entitled to make it. As we have seen in this case, the defendant applied for a removal of the case to the Federal court. Thereby he is foreclosed from objecting to its jurisdiction. In like manner, after the removal had been ordered, the plaintiff elected to remain in that court, and he is equally with the defendant, precluded from making objection to its jurisdiction."

The result of the Wisner Case, as modified by the Moore Case, was to settle definitely a question as to which there had previously been a conflict of opinion in the Federal Courts, as shown in Foulk v. Gray (C. C.) 120 Fed. 156, 157, and to finally determine that a suit commenced in a State court in a district in which neither the plaintiff nor the defendant resided, was not removable by the defendant to the Circuit Court of the United States for such district on the ground of diversity of citizenship, and that where, after such removal, objection to the jurisdiction of such Circuit Court had not been waived by the plaintiff, the suit must be remanded to the State court. Western Loan & Min. Co. v. Min. Co., 210 U. S. 368, 28 Sup. Ct. 720, 52 L. Ed. 1101; Greutter v. Telegraph & Telephone Co. (C. C.) 181 Fed. 248, 255. And see Kreigh v. Westinghouse Co., 214 U. S. 249, 253, 29 Sup. Ct. 619, 53 L. Ed. 984.

It is, however, clear, I think, when the decisions in the Wisner and Moore Cases are read together, that the principle upon which they rested was not limited to cases in which the general jurisdiction of the Circuit Court depended upon diversity of citizenship, but that it necessarily applied all cases in which there was a general jurisdiction in the Circuit Courts with a limitation as to the particular district in which an original suit might be brought. The broad doctrine of these cases is, as I read them, this: That no suit could be removed from a State court into the Circuit Court for the district in which the suit was pending unless it could have been originally brought in such Circuit Court; that in a case within the general jurisdiction of the Circuit Courts, but not within that of a particular Circuit Court, jurisdiction could only be acquired by such particular Circuit Court, in

removed suits as well as in original suits, by the "consent of both parties," such consent being manifested in removed suits by the defendants' action in removing the case to the particular court and by the plaintiff's action in waiving objection to the jurisdiction of such court after the removal, just as in original suits it was manifested by the plaintiff's action in bringing the suit in such particular court and the defendant's action in waiving objection to the jurisdiction of such court after being sued; and that where a suit pending in a State court was within the general jurisdiction of the Circuit Courts, but could not have been brought originally by the plaintiff against the defendant in the particular Circuit Court of the district in which the suit was pending, without the consent of the defendant, it followed, conversely, that, as the petition and the bond for removal constituted process by which the plaintiff was brought by the defendant before such Circuit Court, such court could, in like manner, not acquire jurisdiction unless the plaintiff consented thereto; in other words, that the right of objection given to the defendant under the process in an original suit, and that given the plaintiff, as a quasi-defendant, under the process of removal, were correlative, and that the plaintiff had the same privilege of objecting to the jurisdiction of the particular Circuit Court, when brought before it by the removal process, that the defendant would have had of objecting to the jurisdiction of such particular court if brought before it by original process.

Clearly, however, if this be a correct view of the underlying principle upon which the decisions in the Wisner and Moore Cases were based, it followed necessarily that its application was not limited to cases in which general jurisdiction of the Circuit Courts depended upon diversity of citizenship, but that it applied with equal force in all cases in which the Circuit Courts had general jurisdiction of the suit, but in which the Circuit Court of the particular district in which the State suit was pending would not have had jurisdiction of the suit originally except by the consent of the defendant, and that under this principle it was correctly held in Hubbard v. Ry. Co., supra, and other cases above cited, that since a suit arising under the Constitution and laws of the United States could not be brought originally in a district in which the defendant did not reside (Macon Grocery Co. v. Atlantic Coast Line, 215 U. S. 501, 30 Sup. Ct. 184, 54 L. Ed. 300), except by consent of the defendant, such suit, if brought in a State court in a district in which the defendant did not reside, was not removable by the defendant to the Circuit Court of such district or the jurisdiction of the Circuit Court maintainable under such removal unless the plaintiff waived his objection thereto. As was said by Newman, District Judge, in Bottoms v. Railway Co., supra (C. C.) 179 Fed. at page 319:

"If the plaintiff can make the question, and object to the jurisdiction of the particular Circuit Court of a particular district over a case, where the removal is because of diversity of citizenship only, why may not the plaintiff object, and make the question as to jurisdiction where the case is removed because brought under an act of Congress?"

And so conversely, as was said by Lowell, Circuit Judge, in Corwin Mfg. Co. v. Washer Co. (C. C.) 151 Fed. 939:

"If, where the process is the plaintiff's, the defendant may give this court jurisdiction by consent, it would seem to follow that where the process is the defendant's, the plaintiff may give jurisdiction by consent."

This conclusion also finds inferential support in the Matter of Dunn, 212 U. S. 378, 384, 29 Sup. Ct. 299, 53 L. Ed. 558, in which in determining whether a suit brought in a State court in the Northern District of Texas against the Texas and Pacific Railway, a corporation created by act of Congress, and two residents of Texas, had been properly removed to the Circuit Court of the United States for that district, as one arising under the Constitution or laws of the United States, the court said:

"The right to remove, under the statute, depends upon whether the suit could originally have been brought in the Circuit Court of the United States. Traction Company v. Mining Company, 196 U. S. 239, 245 [25 Sup. Ct. 251, 49 L. Ed. 462]; Cochran, etc., v. Montgomery County, 199 U. S. 260, 26 Sup. Ct. 58, 50 L. Ed. 182, 4 Ann. Cas. 451. The question then is whether the United States Circuit Court for the proper district (Northern District of Texas) would have had jurisdiction of a suit commenced in that district by the plaintiffs against the railway company and the two individual defendants."

See, also, in In re Winn, 213 U. S. 458, 29 Sup. Ct. 515, 53 L. Ed. 873, in which a suit claimed to arise under the Constitution and laws of the United States had been brought in a State court in a district in which the defendant did not reside and removed to the Circuit Court, the incidental reference suggesting that if the suit had in fact been one of the character claimed, the plaintiff would have had the "right to object to the jurisdiction" of the Circuit Court. 213 U. S. page 469, 29 Sup. Ct. 519, 53 L. Ed. 873.

So in a recent opinion of the Circuit Court of Appeals for the Sixth Circuit, in Garrett v. Railroad Co., 197 Fed. 715, in which an action based upon a Federal statute had been removed from the State court to the Circuit Court and there tried without motion to remand or other objection on the part of the plaintiff, although the defendant was not a resident of the district, the court said, citing among other cases Hubbard v. Ry. Co., supra, that "since the parties could and did accept the jurisdiction of the court below * * * the removal cannot be and is not questioned," thus implying that the removal could not have been sustained if the plaintiff had not accepted the jurisdiction of the Circuit Court after the removal.

This view is also directly supported by various cases, arising since the decisions in the Wisner and Moore Cases, in which, contrary to the view generally entertained by the Federal Courts, before these decisions, it has been held, in accordance with the decisions in those cases, that since, under the acts of 1875 and 1888, an alien could not sue a citizen of the United States except in a district in which the defendant resided, a suit brought by an alien against a citizen of the United States in a State court in a district in which the defendant did not reside, was not removable by the defendant to the Circuit Court for such district or jurisdiction of the suit maintainable by the Circuit

Court unless objection thereto was waived by the plaintiff. Mahopoulus v. Railway Co. (C. C.) 167 Fed. 165, and 167 Fed. 171 (on rehearing); Odhner v. Railway Co. (C. C.) 188 Fed. 507 (Coxe, Circuit Judge); Sagara v. Railway Co. (C. C.) 189 Fed. 220; and Zerba v. Asphaltum Co., an unreported opinion by Marshall, District Judge, cited in Sagara v. Railway Co., supra, 189 Fed. at page 221. Mahopoulus v. Railway Co., supra, is furthermore cited with apparent approval in Shawnee Nat. Bank v. Railway Co. (C. C.) 175 Fed. 456, 461.

And, by parity of reasoning, it was held in Tierney v. Ins. Co. (C. C.) 163 Fed. 82, 83, 90, that since an alien could only be sued by a citizen in a district in which valid service may be made upon the defendant, where an alien was sued by a citizen in a State court in a district in which valid service could not be made on the defendant within the Federal rule, the Circuit Court of such district did not acquire jurisdiction of the cause through removal proceedings by the alien defendant, and the cause must be remanded to the State Court.

In the original opinion in Mahopoulus v. Railway Co., supra (C. C.) 167 Fed. at page 171 the court said:

"As has been seen, the privilege of plaintiff to have brought her action originally in this court is coupled with a condition that defendants should consent thereto. Over this condition plaintiff has no control, and this court no power. * * * In view of this condition of the law, she sought the state forum where she could, under its forms, compel attendance by defendants and compliance with its mandates. Defendants being thus pursued in a forum where they must appear, and the orders of which they must obey, by the petition and bond for removal filed therein have invited plaintiff to litigate her cause with them in this forum, in which she could not have compelled their attendance. To this invitation she declines her consent, preferring, as shown by her motion to remand, to proceed with her controversy where she began it. This, I think, she may do."

And on the rehearing in this case the court, after quoting from the opinion in the Moore Case the language above cited showing that the first question brought up was "whether both parties did accept the jurisdiction of the United States Court," said ([C. C.] 167 Fed. at page 173):

"It was found in that case both parties had consented to the exercise of the jurisdiction of the federal court over their controversy, and notwithstanding the doctrine of the Wisner Case, as the court had jurisdiction over the subject-matter of the controversy by reason of the diverse citizenship of the parties, the consent to the exercise of its jurisdiction over the persons of both parties made the jurisdiction of the court full and complete. However, in this case the plaintiff has given no consent to the exercise of jurisdiction by this court over her person, and has taken no step in this case since the removal taken by defendants which has not been by her expressly and intentionally opposed to the exercise of jurisdiction by this court over her person. How, then, can she be said to have given her consent, which, as has been said, is essential to the obtaining of full and complete jurisdiction over both the subject-matter and the parties to the action. She did consent to the exercise of jurisdiction by the state court in which she brought her action over both her person and her controversy, but she had no choice of forums. She could not have commenced her action in this court without consent of defendants. How can it be held her resort to a court of this state, the only one in the state to which she could resort, is tantamount to a consent to the exercise of jurisdiction over her person by this court, a court to which she could not have resorted in the first instance of her

own will, had she felt so inclined, without consent of defendants, is beyond my comprehension, and to my mind such reasoning is both illogical and unsound."

· It is true that it has been held to the contrary in removed suits brought by aliens against nonresident defendants, in Barlow v. Railway Co. (C. C.) 164 Fed. 765, (C. C.) 172 Fed. 513 (petition for rehearing), Bagenas v. Southern Pac. Co. (C. C.) 180 Fed. 887, and Decker v. Southern Ry. Co. (C. C.) 189 Fed. 224. And see, obiter, Fribourg v. Pullman Co. (C. C.) 176 Fed. 981. In Bagenas v. Railway Co., supra, however, the opinion was rested entirely, and in Decker v. Southern Ry. Co., supra, partly, upon the action taken by the Supreme Court in Matter of Tobin, Petitioner, 214 U. S. 506, 29 Sup. Ct. 702, 53 L. Ed. 1061, in which an application for a writ of mandamus to a Circuit Court to remand a case of this kind to the State court, was denied, without comment. The effect of the Matter of Tobin is, however, I think, correctly stated in Sagara v. Railway Co., supra (C. C.) 189 Fed. at page 223, in which the court said:

"But it is earnestly insisted that the Tobin Case, 214 U. S. 506 [29 Sup. Ct. 702, 53 L. Ed. 1061], * * * and Nicola's Case, 218 U. S. 668 [31 Sup. Ct. 228, 54 L. Ed. 1203] * * * must be taken as an approval of the contrary view. I do not so regard them. To do so would, in effect, be to say that the mere fact that the Supreme Court declines to take jurisdiction a petition for the writ of mandamus is equivalent to an express approval by that court of the correctness of the acts complained of. It would seem that the correct interpretation of the action of that court in those cases is that it but followed the principle announced in Ex parte Hoard, 105 U. S. 578 [26 L. Ed. 1176], * * * wherein it is said 'jurisdiction has been given to the Circuit Court to determine whether the cause is one that ought to be remanded,' and 'no case can be found in which a mandamus has been used to compel a court to remand a cause after it has once refused a motion to that effect'; which principle was reannounced and adhered to in Re James Pollitz, 206 U. S. 323 [27 Sup. Ct. 729, 51 L. Ed. 1081], * * * and in Ex parte Gruetter, 217 U. S. 586 [30 Sup. Ct. 690, 54 L. Ed. 892]. * * * That this is the proper construction to be placed upon the action of the Supreme Court in the Matters of Tobin and Nicola is made clear by the opinion of that court in Ex parte Harding, 219 U. S. 363 [31 Sup. Ct. 324, 55 L. Ed. 252, 37 L. R. A. (N. S.) 392]."

And see to the same effect, Odhner v. Railway Co., supra (C. C.) 188 Fed. at page 508.

Nor can I agree in the view suggested in Decker v. Southern Ry. Co., supra, that the doctrine of the Wisner and Moore Cases is to be distinguished upon the ground that the provisions as to venue in suits by an alien against a citizen—which are the same as in suits arising under the Constitution and laws of the United States—are for the benefit of the defendant alone, while in suits in which Federal jurisdiction depends upon diversity of citizenship the provision limiting venue to the district of the residence of either the plaintiff or the defendant is for the benefit of the plaintiff also. It was well settled that under the acts of 1875 and 1888 the restriction as to venue in suits where diversity of citizenship existed was "a personal privilege of the defendant," which the defendant might either insist upon or waive at his election. Central Trust Co. v. McGeorge, 151 U. S. 129, 132, 14 Sup. Ct. 286, 38 L. Ed. 98; Mexican Nat. R. Co. v. Davidson, 157

U. S. 201, 208, 15 Sup. Ct. 563, 39 L. Ed. 672, 675; and Interior Constr. Co. v. Gibney, 160 U. S. 217, 219, 16 Sup. Ct. 272, 40 L. Ed. 401. This "personal privilege of the defendant" in such cases clearly differed in no respect from his like privilege in other cases of general federal jurisdiction, except in its extent; that is, in suits between citizens of different states he can object to being sued except in the district where either he or the plaintiff resided; and in other cases, except in the district in which he resided. And clearly I think neither of these provisions was in any sense a privilege of the plaintiff; on the contrary they were limitations upon his right of suit constituting a "privilege" that could be availed of by the defendant alone. The three cases last cited, showing that the limitation upon venue in suits between citizens of different states was a privilege of the defendant alone, were, with other earlier cases, to the same effect, quoted in the opinion in the Moore Case, and it was nowhere intimated or suggested in that opinion that the conclusion reached was derived in any manner from any privilege conferred upon the plaintiff in an original suit by the limitations upon venue provided by the acts as an exemption in the defendant's favor. On the contrary, as above stated, the decision rested, in my opinion, on the broad ground, which is decisive of the question now under consideration, that a plaintiff brought into the Circuit Court by the defendant's process of removal, had the right to object to the jurisdiction of the particular Circuit Court, since the defendant would have had such right of objection if brought into the same court under original process by the plaintiff.

Furthermore the case of Rones v. Katalla Co. (C. C.) 182 Fed. 947, which is cited in the Decker Case, is not, I think, in point, as in that case, after the defendant had removed the case to the Federal Court, under a misapprehension as to the citizenship of the plaintiff, the plaintiff had acquiesced in the jurisdiction of the Circuit Court, and after the plaintiff had obtained judgment in the Circuit Court, the defendant was itself attempting to have the judgment vacated and the cause remanded to the State court.

[2] 2. However, it is further insisted in behalf of the defendants that this is a suit to enforce a claim by the plaintiff to property of the defendants within this district, which, under the provisions of section 57 of the Judicial Code might have been originally brought in this court although none of the defendants are inhabitants of this district; and which is hence removable to this court.

Section 57 of the Code, which is derived from section 8 of the act of 1875, and which is one of the "six succeeding sections," specifically excepted from the limitations of section 51 of the Code above quoted, provides that: "When in any suit commenced in any district court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought," one or more of the defendants shall not be an inhabitant of or found within the district, or voluntarily appear, an order directing such absent defendant or defendants to appear and make defence, may be served on him personally wherever found, or where this is not

practicable, by publication; and that in default of appearance and defence by such defendant the court may "entertain jurisdiction and proceed to the hearing and adjudication of such suit * * * ; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district."

For present purposes it may be assumed, without determining, that as suits in reference to property coming within the provisions of section 57 of the Code are expressly excepted from the limitations of section 51 of the Code as to the district in which an original suit may be brought—a similar exception having apparently been implied in the analogous provisions of the acts of 1875 and 1888—a suit of this character coming within the general jurisdiction of the District Courts of the United States by reason of the diversity of citizenship of the parties, or because it arises under the Constitution and laws of the United States, or otherwise (Greeley v. Lowe, 155 U. S. 58, 72, 15 Sup. Ct. 24, 39 L. Ed. 69; Tug River Coal & Salt Co. v. Brigel [C. C. A. 6] 67 Fed. 625, 629, 14 C. C. A. 577; Brigham v. Ludington, 12 Blatchf. 237, 4 Fed. Cas. 124), may be brought in the district in which the property is situated, although the defendants are not inhabitants of such district. See the following cases arising under the analogous provisions of the Acts of 1875 and 1888; Greeley v. Lowe, 155 U. S. 58, 72, 15 Sup. Ct. 24, 39 L. Ed. 69; Dick v. Foraker, 155 U. S. 404, 15 Sup. Ct. 124, 39 L. Ed. 201; Citizens' Saving Co. v. Ill. Cent. R. R., 205 U. S. 46, 27 Sup. Ct. 425, 51 L. Ed. 703; Ingersoll v. Coram, 211 U. S. 335, 29 Sup. Ct. 92, 53 L. Ed. 208; Ladew v. Copper Co., 218 U. S. 357, 31 Sup. Ct. 81, 54 L. Ed. 1069; Perez v. Fernandez, 220 U. S. 224, 31 Sup. Ct. 412, 55 L. Ed. 443; Chase v. Wetzlar, 225 U. S. 79, 32 Sup. Ct. 659, 56 L. Ed. 990; Jones v. Gould (C. C. A., 6) 149 Fed. 153, 80 C. C. A. 1; Single v. Paper Co. (C. C.) 55 Fed. 553; Spencer v. Stockyards Co. (C. C.) 56 Fed. 741; Miller v. Ahrens (C. C.) 150 Fed. 644; Gillespie v. Coal & Coke Co. (C. C.) 162 Fed. 742; Ladew v. Copper Co. (C. C.) 179 Fed. 245; Elk Garden Co. v. Thayer Co. (C. C.) 179 Fed. 556.

In the present case however, the citizenship of the parties is not diverse, so as to give the District Courts general jurisdiction upon that ground. And, after careful consideration, I am constrained to conclude that even if this suit be within the general jurisdiction of the District Courts as one arising under the Constitution and laws of the United States, a matter which is not determined, it is nevertheless not a suit to enforce a claim to property within this district within the meaning of section 57 of the Code, and hence could not have been originally brought in this court under the provisions of this section.

In Ladew v. Tenn. Copper Co. (C. C.) 179 Fed. 245, 250, 251, involving the construction of section 8 of the Act of 1875, I held, after careful consideration, that this section "does not extend either to all suits of a local nature or to all local actions in rem, but is definitely limited to suits brought for the enforcement of certain specific rights," and that the words "claim to property" used in the Act "relate only to

claims made to the property in the nature of an assertion of owner-ship or proprietary interest, or other direct right or claim to the prop-erty itself, * * * and do not include the assertion of ·a right which is not based upon an interest in the property itself, but seeks merely to enforce a restriction which the law imposes upon the owner of the property in reference to its proper use." This case was affirmed generally in Ladew v. Copper Co., 218 U. S. 357, 31 Sup. Ct. 81, 54 L. Ed. 1069.

In Shainwald v. Lewis (D. C.) 5 Fed. 510, it was held that the pro-visions of R. S. 738 in reference to suits in equity "to enforce any legal or equitable lien or claim against real or personal property" did not include a creditors' bill in equity seeking to appropriate the general property of a defendant to the payment of his debts. The court said:

"In my judgment this section was only intended to reach those suits in equity in which it has sought to enforce some pre-existing lien or claim, legal or equitable, upon or to some specific property, real or personal, and not cases in which it is sought to reach and appropriate the general prop-erty of a defendant to the payment of his debts."

In Jones v. Gould (C. C. A., 6) 149 Fed. 153, 157, 158, 80 C. C. A. 1, the court cited with apparent approval the definition of a claim to property given in Shainwald v. Lewis, supra, and said that section 8 of the act of 1875 contemplates that the action "must be one which relates to the title to real or personal property within the district," and that "evidently" its legitimate subject "must be the title to some property." And in Central Trust Co. v. McGeorge, 151 U. S. 129, 133, 14 Sup. Ct. 286, 38 L. Ed. 98, where a citizen of New York had filed in the United States Circuit Court in Virginia a bill to wind up the affairs of an insolvent New Jersey corporation carrying on busi-ness and owning property in Virginia, under which receivers of the defendant's property had been appointed, the court without referring to section 8 of the act of 1875, or suggesting that its provisions au-thorized the institution of such suit in Virginia, said, that "undoubt-edly" if the defendant being sued in another district than that of its. domicile, had ·properly sought to avail itself of its statutory exemp-tion from suit in such district, the jurisdiction of the court could not have been sustained.

In Dormitzer v. Bridge Co. (C. C.) 6 Fed. 217, it was held that the provisions of section 8 of the act of 1875 did not give the Cir-cuit Courts power to proceed by attachment of the property of an absent defendant in a suit for collecting moneys due for unpaid as-sessments of a stock subscription. The court, after citing the provi-sions of section 8 of the act, said:

"But this means a lien or title existing anterior to the suit, and not one caused by the institution of the suit itself."

It is furthermore significant that in Boom Co. v. Patterson, 98 U. S. 403, 25 L. Ed. 206; Searl v. School District, 124 U. S. 197, 8 Sup. Ct. 460, 31 L. Ed. 415; Traction Co. v. Mining Co., 196 U. S. 239, 25 Sup. Ct. 251, 49 L. Ed. 462; South Dakota Ry. Co. v. Railway Co. (C. C. A., 8) 141 Fed. 578, 73 C. C. A. 176; Mineral

Range R. Co. v. Copper Co. (C. C.) 25 Fed. 515; Colorado Midland Co. v. Jones (C. C.) 29 Fed. 193, and Deepwater Ry. Co. v. Coal & Lumber Co. (C. C.) 152 Fed. 824, the jurisdiction of the United States Circuit Courts in condemnation proceedings which had been brought under State statutes and removed from State courts, was sustained solely on the ground of the diversity of citizenship of the parties, without any intimation or suggestion in any of these cases that such jurisdiction might be sustained under section 8 of the act of 1875. And see Pacific Removal Cases, 115 U. S. 2, 5 Sup. Ct. 1113, 29 L. Ed. 319.

In the light of these decisions I conclude, that as the plaintiff in this suit asserts no right of ownership or proprietary interest, or other pre-existing right or claim to the defendants' property, but merely seeks to invoke the exercise of the State's power of eminent domain for the purpose of acquiring, through and by means of its suit, an easement in the defendants' property, it is not a suit to enforce a claim to the defendants' property within the meaning of section 57 of the Code; and that, therefore, it could not have been brought originally by the plaintiff in this court against the nonresident defendants under this section of the Code, even if it be a suit arising under the Constitution and laws of the United States.

3. It follows that, for the reasons above stated, it must be held that as this suit could not have been originally brought by the plaintiff against the defendants in this court, it is not removable by the defendants to this court over the plaintiff's objection, and that since the plaintiff has not waived its objection to the jurisdiction of this court, its motion to remand the suit to the State court must now be granted.

[3] I am strengthened in this conclusion by the well-settled rule, growing in part out of the great practical hardship of protracted and fruitless litigation resulting to litigants from a ruling by a Federal trial court erroneously retaining jurisdiction of a removed cause, as contrasted with the finality of its judgment remanding the cause and restoring jurisdiction to the State court (Missouri Pac. Ry. Co. v. Fitzgerald, 160 U. S. 556, 570, 16 Sup. Ct. 389, 40 L. Ed. 536), that if there be any substantial doubt as to Federal jurisdiction the cause should be remanded, and jurisdiction retained only where it is clear. Black's Dillon on Removal, § 216, p. 356; State of Kansas v. Bradley (C. C.) 26 Fed. 289, 292 (Mr. Justice Brewer, then Circuit Judge); Fitzgerald v. Ry. Co. (C. C.) 45 Fed. 812, 820; Hutcheson v. Bigbee (C. C.) 56 Fed. 329; Concord Coal Co. v. Haley (C. C.) 76 Fed. 883, 884; Crane Co. v. Guanica Centrale (C. C.) 132 Fed. 713; Tierney v. Ins. Co. (C. C.) 163 Fed. 82, 86. The State court will have undoubted jurisdiction of this litigation, and any rights which the defendants may have under the Constitution and laws of the United States may be fully and properly protected, not only in the State courts, but upon writ of error to the Supreme Court of the United States, in the event the final decision in the State courts is adverse to the rights claimed by them.

201 F.—60

5. An order will accordingly be entered granting the plaintiff's motion and remanding this suit to the Circuit Court of Knox County, Tennessee, whence it was removed, and taxing the defendants with all the costs of this court.